IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2001 Session

## OLIVER RANDOLPH, ET AL V. COFFEE COUNTY BEER BOARD, ET AL.

**Appeal from the Circuit Court for Coffee County**
**No. 30,241    Judge John W. Rollins**

**No. M2001-00077-COA-R3-CV - Filed March 7, 2002**

This is an appeal by the Coffee County Beer Board from a decision of the Coffee County Circuit Court ordering the Beer Board to issue permits to Oliver Randolph and Susan Nichols. The trial court concluded that the Coffee County Beer Board regulation prohibiting the issuance of a beer permit to an applicant within two thousand feet of a school or church was void because of discriminatory application of this regulation. The County has appealed this decision insisting that it had uniformly enforced its distance rule including a grandfather provision which authorized the reissuance of permits to nonconforming locations who had enjoyed such a privilege prior to the readoption of the county resolution in 1980. For the reasons stated in this opinion, we affirm the trial court's decision and remand the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

J.S. DANIEL, SP. J., delivered the opinion of the court, in which BEN H. CANTRELL, P. J., M.S., and PATRICIA J. COTTRELL, J, joined.

Robert Fulton Hazard, Tullahoma, Tennessee, for the Appellants, Coffee County Beer Board, et al.

William C. Reider, Tullahoma, Tennessee, for the Appellees, Oliver Randolph and Susan Nichols.

**OPINION**

**I.**
**FACTS**

There is no dispute as to the facts in this particular case. At the trial of this matter the parties stipulated the facts and exhibits. In 1940 the Coffee County Quarterly Court enacted a resolution

which provided that "No permit shall be issued for the sale, storage or manufacture of beer at a location which is within two thousand feet of any church, school, or other place of public gathering." Between June 9, 1976 and January 11, 1980, the Coffee County Beer Board issued beer permits to at least four locations which were within the two thousand feet prohibition from a church or school, in violation of their regulation. In an effort to reestablish the enforceability and validity of their regulation, on February 25, 1980, the Coffee County Board of County Commissioners adopted a resolution which cited Tenn. Code Ann. § 57-205 as its statutory authority and provided that the Coffee County Beer Board, "not issue any permit for sale of beer for any location that lies less than two thousand feet, measured straight from point to point, from any church or school . . . ." The 1980 resolution also contained the following provision, "Further resolved that this resolution shall in no way affect any location that has been issued a permit and is on this date in operation." Throughout these proceedings, this last sentence has been referred to as the County's grandfather clause.

Since the adoption of the 1980 resolution, the Coffee County Beer Board has complied with all the requirements of the resolution, including the grandfather clause. The grandfather clause has been complied with by the County Beer Board issuing beer permits to new owners of the grandfathered locations and the County Beer Board refusing to issue permits to all other locations within two thousand feet of a school or church. However, the county did not revoke any noncomplying permits.

On January 18, 2000, Oliver Randolph applied to the Beer Board for a permit to sell beer at a location within two thousand foot of a church or school. Mr. Randolph's application was denied on the basis of the two thousand foot rule. On January 25, 2000, Mary Susan Nichols also applied to the Beer Board for a permit to sell beer at a location that was within two thousand foot of a church or school. Ms. Nichols's application was also denied on the basis of the two thousand foot rule. Neither Mr. Randolph's nor Ms. Nichols's applications dealt with locations that enjoyed permits issued for the sale of beer prior to the 1980 resolution. Therefore, the sole basis for denial of the permits was that the locations failed to be more than two thousand feet from a church or school.

## II.
## ISSUE

The issue for consideration and determination in this case is whether the trial court erred in finding that the Coffee County's 1980 "distance resolution" prohibiting beer sales within two thousand feet of a school or church, was void because of discriminatory application. Intertwined with the initial issue is whether the Coffee County resolution has a valid grandfather provision which complies with Tenn. Code Ann. § 57-5-109, thereby validating the action of the Board.

## III.
## DECISION

Our review in this case with respect to the trial court's legal conclusions is de novo with no presumption of correctness. Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997);

2

Pursell v. First American Nat'l Bank, 937 S.W.2d 838, 840 (Tenn. 1996); Cook v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 938 (Tenn. 1994); Tenn. R. App. P. 13(d).

The trial court found that the Beer Board ordinance was invalid because of prior discriminatory enforcement of that ordinance. Discriminatory enforcement of Beer Board ordinances in the issuance of licenses is illegal and violates the equal protection rights of those who are denied such a permit. When permits are issued in violation of the ordinance's limitation on distance, such permits destroy the validity of the ordinance. Seay v. Knox County Quarterly Court, 541 S.W.2d 946, (Tenn. 1976).

The stipulated facts in this case establish that between June 9, 1976 and January 11, 1980, the Coffee County Beer Board engaged in the discriminatory issuance of beer permits to locations that did not comply with the distance resolution. Once discriminatory enforcement of beer permit distance ordinances has been established, those ordinances cannot be rectified by post facto amendments. Restoration of the validity of a distance ordinance can only be achieved by revocation or other elimination, such as attrition, of the discriminatorily issued permits and licenses. Rutherford County Beer Board v. Adams, 571 S.W.2d 830 (Tenn. 1978); City of Murfreesboro v. Davis, 569 S.W.2d 805, (Tenn. 1978); Seay v. Knox County Quarter Court, 541 S.W.2d 946 (Tenn. 1976); Serv. U. Mart, Inc. v. Sullivan County, 527 S.W.2d 121 (Tenn. 1975).

Clearly, in these stipulated facts, Coffee County was attempting to restore the validity of their distance ordinance by the County Commission's resolution in 1980. The resolution attempted to reinstitute the distance ordinance, however, this could only be accomplished by the revocation of noncomplying licenses or other elimination of such licenses by attrition. Revocation was the means in which the county reestablished a distance limitation in the cases of Henry v. Blount Cty. Beer Bd., 617 S.W.2d 888 (Tenn. 1981) and Needham v. Beer Bd. of Blount Cty., 647 S. W. 2d 226 (Tenn. 1983). The Court approved of revocation as the method of reinstituting the distance limitation in these cases. The Court in Needham, id. at 231, emphasized that since the discriminatorily issued beer permits had been eliminated by revocation that the county's regulation was restored to it's validity. Key to the restoration of the distance ordinance is the elimination of the discriminatorily issued permits, and this may be accomplished by revocation or attrition.

Coffee County never revoked any of the discriminatorily issued permits. The county contends that they had established an attrition policy for the elimination of these permits. The trial court made a finding that the County Beer Board had an attrition policy, although there appears to be no such written policy in the record. The County asserts that their attrition policy was that if there was a cessation of the sale of beer at one of the grandfathered locations, that location would no longer qualify for a permit. It appears from the record, that four of the locations which did not comply with the distance regulations under the 1940 regulation, have been sold and new beer permits issued to the new owners after the 1980 resolution. The record does not establish the removal of any noncomplying location by attrition as the result of cessation of the sale of beer.

3

Attrition is defined in Webster's Collegiate Dictionary 75 (10th ed. 1993), as a reduction in numbers usually as a result of resignation, retirement or death. Attrition, as defined in the unwritten county policy, has resulted in the removal of no location that received a discriminatorily granted beer permit through resignation, retirement, death or otherwise. Therefore, Coffee County's attrition is an illusion, and in reality this policy has lent itself to a perpetuation of the discriminatorily issued permits. Such a policy violates the holding of the Supreme Court which requires the elimination of discriminatorily issued permits in order for a county to restore validity to its distance regulations.

The Legislature has provided assurances to those businesses who possess a valid beer license that those licenses will not be revoked by city or county because of the proximity of the business to a school or residence through the passage of Tenn. Code Ann. § 57-5-109. This statute became effective January 1, 1993 and states as follows:

> "A city or county shall not suspend, revoke or deny a permit to a business engaged in selling, distributing, or manufacturing beer on the basis of the proximity of the business to a school, residence, church or other place of public gathering if a valid permit had been issued to any business on the same location as of January 1, 1993. This section shall not apply if beer is not sold, distributed or manufactured at that location during any continuous six month period after January 1, 1993."

This Court has previously had an opportunity to construe this statute in the case of Exxon Corp. v. Metro. Gov't, 2001 Tenn. App. LEXIS 44, Tenn. App. MS, Jan. 24, 2001, No. M2000-00614-COA-R3-CV. In examining the legislative intent, we concluded that the legislature intended to provide protection to businesses that had valid permits if those permits "had been issued to any business on that same location as of January 1, 1993." Therefore, we must consider whether this statute affords Coffee County the right, under its grandfather clause, to continue issuing beer permits to these nonconforming locations.

This statute is applicable and only gives the county relief if the permits in question are valid. It would be possible to have valid permits issued to locations which failed to meet the current county distance requirement. This could occur where the beer permit had been issued to a location which complied with the county's then existing distance requirements and thereafter a church and/or school was built within two thousand feet from the establishment enjoying the license. In such a case, the validly issued permit precedes the entry of the use which the distance requirement is measured from. Another way in which a valid permit could exist is if the original permit had complied with the then existing county distance requirement and thereafter the county, by a different resolution, changed its distance requirement to a distance that was closer to a church or school than had existed in the ordinance under which the original permit was issued. In situations such as these the permit had been validly issued and the legislature, through Tenn. Code Ann. § 57-5-109 has provided the business owner with assurance that the city or county could not suspend, revoke or deny the business location's permit for the continuation of beer sales at that location absent a complete cessation of the sale of beer for six continuous months.

4

This is not the situation presented in this case. What has occurred in this case is the perpetuation of the discriminatorily issued beer permits that preceded the 1980 resolution. We conclude that the 1980 resolution and its grandfather provision failed to remedy the prior discriminatory issuance of beer permits by revocation or attrition and, therefore, the Coffee County grandfather clause perpetuated that discrimination and permits issued under the grandfather clause are invalidly issued. Therefore, the protection of this statute is not available to the county to justify the continuation of this discriminatory practice.

We conclude that the trial court properly applied the law in this case to the stipulated facts and the trial court's determination is affirmed. This case is to be remanded to the Coffee County Circuit Court for execution of a judgment and the issuance of the permits.

_____

J.S. DANIEL, SPECIAL JUDGE